UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CHESTER L. WALLACE, TDOC #330282 | ) | |
| | ) | |
| v. | ) | NO. 2:07-CV-246 |
| | ) | |
| HOWARD CARLTON, Warden, JOSEPH | ) | |
| SHEPHERD, D-Board Sgt., STEVE PAYNE, | ) | |
| Alternate D-Board Sgt., MEGAN SWIFT, | ) | |
| C/O, GEORGE LITTLE, Comm'r of Dep't | ) | |
| of Corr., EDWARD MCCONNELL, Inmate | ) | |
| & Agent of D-Board Sgt. Shepherd | ) | |

## **MEMORANDUM and ORDER**

Chester L. Wallace, an inmate in the custody of the Tennessee Department of Correction [TDOC], has filed this *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that his constitutional rights were violated in connection with his prison disciplinary proceedings. The defendants are Howard Carlton, the Warden at the Northeast Correctional Complex [NECX] where plaintiff is confined, several NECX officers, who were associated with those proceedings, the TDOC Commissioner,[1] and a fellow prisoner, who was plaintiff's inmate legal advisor.

---

[1] On January 14, 2010, Gayle E. Ray replaced George Little as the TDOC Commissioner. See the Tennessee Department of Correction website, available at http://www.state.tn.us/correction (as visited May 10, 2010). Because the claims against former Commissioner Little will be disposed of in this order, the Court sees no reason to substitute as a defendant Commissioner Gayle for former Commissioner Little.

I. **The Filing Fee**

A prisoner, regardless of his financial situation, must pay the filing fee, even if it must be collected in increments. Therefore, plaintiff is **ASSESSED** the filing fee of three hundred and fifty dollars ($350). The custodian of plaintiff's inmate trust account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial partial payment, twenty percent (20%) of the greater of either the average monthly deposits to his inmate trust account or the average monthly balance in the account, for the six (6) months immediately preceding the filing of the complaint. 28 U.S.C.§ 1915(b)(1).

After full payment of the initial partial filing fee, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full $350 fee has been paid to the Clerk of Court.[2] 28 U.S.C. § 1915(b)(2).

To ensure compliance with the assessment procedures outlined above, the Clerk is **DIRECTED** to mail a copy of this Order to the custodian of inmate trust accounts at the NECX and to TDOC Commissioner Gayle E. Ray.[3]

II. **Screening**

---

[2] Payments should be mailed to: Clerk's Office, USDC
220 West Depot Street, Ste. 200
Greeneville, TN 37743.

[3] On January 14, 2010, Gayle E. Ray replaced George Little as the TDOC Commissioner. See the Tennessee Department of Correction website, available at http://www.state.tn.us/correction (as visited May 10, 2010). Because the claims against former Commissioner Little will be disposed of in this order, the Court sees no reason to substitute as a defendant Commissioner Gayle for former Commissioner Little.

The Court must now screen the complaint to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

### III. **Plaintiff's Allegations**

From the rather circuitous and confusing allegations presented in the complaint, the Court has pieced together the following factual backdrop.

On November 19, 2006, plaintiff, who was then in punitive segregation at NECX, was served with a disciplinary report for creating a disturbance. On November 21, 2006, the day plaintiff's disciplinary hearing was scheduled, he was visited by defendant Edward McConnell, who had been appointed as his inmate advisor. This defendant told plaintiff that he would negotiate a verbal warning and time served as punishment for the infraction, that he (plaintiff) would be moved from the segregation unit that day or the next, and that he (plaintiff) would receive the disciplinary paperwork within a day or two. After defendant McConnell left, plaintiff asked about being escorted to the hearing and was told by an officer that he need not attend a hearing, since he was being given a verbal warning.

Two weeks later, the paperwork had yet to arrive, so plaintiff went to the disciplinary board office to pick it up. Defendant Sgt. Joseph Shepherd told him that the paperwork was in Operations and that he (defendant Shepherd) would retrieve it and have it ready for plaintiff after lunch. When plaintiff received those documents and reviewed

them, he discovered that he had pled guilty and had been found guilty of a class-C disciplinary offense. Since plaintiff had never seen those documents previously, he concluded that his four signatures were forgeries. Later, defendant McConnell admitted that he was the one who had signed the documents. Plaintiff then filed a grievance and an appeal concerning the forgery, but those proceedings were unsuccessful because TDOC's grievance system excludes from its purview complaints involving disciplinary action or hearings.

The matter did not end here because on February 18, 2007, defendant C/O Megan Swift, who is Sgt. Shepherd's niece, issued plaintiff and his cell mate a disciplinary write up for creating a disturbance[4] during head count. However, if there was a disturbance, it was created by defendant Swift herself, who uses foul and obscene language in front of the inmates. This kind of conduct is typical of defendant Swift and is allowed to go unchecked because her entire family works at NECX—a fact which she frequently cites.

Plaintiff's cell mate's disciplinary hearing occurred prior to March 7, 2007, when plaintiff's own hearing was held. Defendant Swift had not testified at that hearing and plaintiff's cell mate had received only a verbal warning and a work sanction. However, defendant Swift attended plaintiff's hearing and she also testified falsely at the hearing. Moreover, on her way to the hearing, she conversed with defendant Shepherd outside the disciplinary hearing office. Plaintiff believes that defendant Shepherd had had a prior conversation with the alternate disciplinary board chairperson, defendant Steve Payne, who

---

[4] Plaintiff also identifies the charged offense as "disrespect."

presided over plaintiff's hearing, because, even though plaintiff established his innocence by a preponderance of the evidence, he was still found guilty of the charged infraction. It is plaintiff's premise that the events and conduct alleged above stemmed from a conspiracy between defendants Shepherd, Swift and Payne to retaliate against him by finding him guilty of the disciplinary infraction.

For the alleged violation of his federally protected rights, plaintiff asks that his disciplinary convictions be dismissed or expunged, that TDOC policy numbers 501.01 and 502.01 be declared unconstitutional, that sweeping changes be made in the grievance and disciplinary proceedings of Tennessee inmates, that a special commission composed of members of the T.B.I. or F.B.I be convened to investigate systemic claims of illegal activity, official oppression, and misconduct and to meet with inmates so as to determine whether criminal investigations are warranted, that all NECX officials and employees be enjoined from tampering with plaintiff's records, and that he be reimbursed for the filing fee he has been assessed. For the great anxiety and emotional stress he has sustained from the wrongful acts alleged above, plaintiff also seeks ten thousand dollars [$10,000] in compensatory damages and the same amount in punitive damages against defendants Shepherd, Swift, Payne, and Carlton.

### IV. **Law & Analysis**

A. *Defendants*

At the outset, there are problems with three of the named defendants.

Plaintiff's allegations against defendant Warden Carlton are that he is responsible for the day-to-day operation of the prison and the fair treatment of inmates consigned to his care and that the Warden's neglect of these duties and his tolerance of the unlawful acts of his subordinates makes him liable to plaintiff for the constitutional infringement of plaintiff's rights. Likewise, plaintiff charges that the TDOC Commissioner failed to perform the duties imposed upon him by state law, and that he too allowed the illegal actions outlined above to occur.

By naming these two TDOC officials as defendants, plaintiff is seeking to impose supervisory liability on them. However, this theory is unworkable in this particular lawsuit because § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 80-81 (6th Cir. 1995); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). While a supervisor can be held liable if he plays an active role in the alleged misconduct, no liability attaches if he merely fails to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Also, plaintiff must establish the personal involvement of each defendant in the supposed constitutional deprivation. *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982) .

Absent some concrete showing that defendants authorized, approved, or knowingly acquiesced in the alleged conduct of these TDOC employees, plaintiff has failed to state a § 1983 claim against them. *Walton v. City of Southfield,* 995 F.2d 1331, 1340 (6th Cir. 1993)*; Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). As to plaintiff's assertion

that defendants Carlton and Little neglected to perform their duties, it is well recognized that allegations of mere negligence will not entitle a plaintiff to relief under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986)

Plaintiff has also named as a defendant his inmate legal advisor, Edward McConnell. To state a viable § 1983 claim, plaintiff must allege: 1) that he was denied a right privilege or immunity secured by the constitution or laws of the United States, and 2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). The plaintiff has failed to make the second showing because defendant McConnell is a prisoner, not a state actor. Although plaintiff claims that defendant McConnell is an "Agent of D-Board Sgt. Shepherd," there are no allegations of fact to support that these defendants colluded to deny plaintiff's rights. Thus, his allegations are conclusory and such allegations are insufficient to establish state action. *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (citing *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1987)).

B. *<u>Disciplinary Proceedings (Due Process Violations)</u>*

This claim, as the Court understands it, involves plaintiff's allegations that his inmate advisor led him to believe that his only punishment would be a verbal warning and time served, when in reality, plaintiff was given more than a verbal warning: He was found guilty of a class-C disciplinary offense based on a forged guilty plea document. This claim

7

likely includes plaintiff's contention that he was not escorted to his disciplinary hearing because, according to a guard, his attendance was unnecessary since he was to receive only a verbal warning.

To prevail on a procedural due process claim, a plaintiff must show: 1) that he enjoyed a protected liberty interest and 2) that the process owed him was denied. *See Board of Regents v. Roth*, 408 U.S. 564, 569-570 (1972). A liberty interest arises either from the Due Process Clause in the Fifth or Fourteenth Amendments of the Constitution or from the rights conferred by a state.

Plaintiff has no freestanding liberty interest under the Due Process Clause in being free from action taken "within the sentence imposed." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (citation omitted), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). A valid conviction allows a state constitutionally to deprive a criminal defendant of his liberty, confine him in a prison, and subject him to its rules, so long as conditions of confinement fall within the parameters of the sentence imposed. *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (no due process violation where conditions "within the terms of confinement ordinarily contemplated by a prison sentence"). Certainly, the imposition of a prison sentence carried with it the authority for state prison officials to sanction plaintiff for violating prison rules. *Sandin*, 515 U.S. at 486 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."). Thus, plaintiff has not been deprived of a liberty interest under the Due Process Clause. *Id* at 483-486.

Plaintiff has not been deprived of a state-created liberty interest either. Liberty interests conferred by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* at 484. Even though the length of administrative segregation, in extreme circumstances, may ascend to the level of an "atypical and significant"deprivation which will implicate a protected liberty interest, there is no indication that the disciplinary convictions at issue here imposed an atypical or unusual hardship on plaintiff in relation to the ordinary incidents of prison life or that they will inevitably affect the duration of his sentence, since he does not claim the loss of good time credits. *See id.* at 487.

Thus, because plaintiff has not been deprived of a state-conferred liberty interest by virtue of the adverse disciplinary decision, he has no constitutional platform upon which to base his challenges to his disciplinary conviction. *See, e.g., Draughn v. Green*, No. 97-1263, 1999 WL 164915 (6th Cir. Mar. 12, 1999) (absent liberty interest in being free of segregation, prisoner has no constitutional basis for attacking informant's reliability) (unpublished); *Parrett v. Harrison*, No. 97-5649, 1998 WL 939942 (6th Cir. Dec. 22, 1998) (no due process right not to be charged with disciplinary offense) (unpublished); *but see Harden-Bey*, 524 F.3d at 796 (inmate's three-year placement in indefinite administrative segregation, without a hearing, implicates Due Process Clause); *Shoats v. Horn,* 213 F.3d 140, 144 (3d Cir.2000) (finding an eight-year stint in administrative custody to be "'atypical'

[and significant] in relation to the ordinary incidents of prison life").[5]

C. *__Conspiracy to Retaliate__*

As the Court reads this nebulous claim, plaintiff is asserting that four named defendants conspired with one another in some fashion to charge him with additional disciplinary infractions. The conspiracy was motivated by their desire to retaliate against plaintiff for filing grievances complaining about the previous disciplinary decision, which was based on a guilty plea document containing an alleged forgery.

A civil conspiracy, as explained by the Sixth Circuit, "is an agreement between two or more persons to injure another by unlawful action. *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir 2003) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Here, plaintiff claims that there was in existence a civil conspiracy, but he has not provided any facts to show that there was "a meeting of the minds" between two or more defendants as to *one* plan, *see Spadafore*, 330 F.3d 854, to violate plaintiff's constitutional rights. Moreover, conspiracy claims must be pled with some degree of specificity; vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. *Id.* Allegations premised upon mere conclusions and opinions, as are these, need not be accepted as true and, thus, fail to state a claim. *See Chapman v. City of Detroit*, 808 F.2d

---

[5] Because the length of the plaintiff's sentence was unaffected by his disciplinary conviction, the allegations do not implicate the rule in *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), which requires a favorable termination of disciplinary proceedings as a prerequisite to bringing a § 1983 claim, but only where the duration of a prisoner's confinement is affected.

459, 465 (6th Cir. 1986) (holding that § 1983 complaint must contain factual basis for claims, skeletal allegations of unconstitutional conduct inadequate).

Moreover, it is doubtful that plaintiff has sufficiently alleged all the elements of a retaliation claim. Prisoners have a First Amendment right to file grievances without suffering retaliation for doing so. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). A prisoner states a retaliation claim if he shows that: (1) he engaged in protected conduct (2) an adverse action was taken against him which would deter a person from ordinary firmness from continuing to engage in such conduct and (3) the adverse action was motivated by the protected conduct. *Id.*, at 394.

Plaintiff has alleged that he was given a second write up for filing a grievance. This is conduct protected by the First Amendment. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Thus, plaintiff has satisfied the first element of a retaliation claim. However, assuming but not finding that plaintiff also has met the second element, he clearly has failed to establish the third one.

While plaintiff has recounted several events and actions involving his disciplinary proceedings, he has failed to show any nexus between those alleged wrongful actions and a conspiracy. Plaintiff's characterization of those incidents and associated conduct as conspiratorial events and acts (e.g., plaintiff's cell mate, who was found guilty, was punished less severely than plaintiff; Disciplinary Board Chairman Shepherd and Officer Swift, the officer who charged plaintiff with disrespect and testified at his hearing, were seen chatting outside the hearing venue prior to plaintiff's disciplinary hearing and (impliedly)

were conspiring against him; Alternate Disciplinary Board Chairman Payne, who conducted plaintiff's hearing, took part in the conspiracy by finding plaintiff guilty, even though plaintiff presented evidence which showed, by a preponderance, that he was innocent; and, defendant Shepherd, prior to his conversation with defendant Swift, must have spoken with defendant Payne, or at least plaintiff senses that this was so), is based merely on his own opinions and conclusions. As noted earlier, mere conclusions will not support a claim for a constitutional tort. *See Harden-Bey*, 524 F.3d at 796. Plaintiff's assertion of the existence of a retaliatory conspiracy lacks merit, is conclusory, and fails to state a § 1983 claim for relief.

D. *Other Claims*

Plaintiff's claims for damages cannot survive because he alleges only emotional pain stemming from defendant's actions. Absent a prior showing of physical injury, a prisoner cannot collect damages for mental suffering for a constitutional violation. 42 U.S.C. § 1997e(e).

Equally unavailing is plaintiff's final claim—that his grievances were not reviewed because complaints about disciplinary proceedings are not cognizable subjects in the TDOC grievance system. There is no constitutional right to a grievance procedure, *LaFlame v. Montgomery County Sheriff's Dept.*, 3 Fed.Appx. 346, *at 348, 2001 WL 111636, at *2 (6th Cir. Jan. 31, 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)), and no constitutional infringement occurs by the mere denial of a prisoner's grievance. *Alder v. Correctional Medical Services*, 73 Fed.Appx. 839, at *841, 2003 WL

22025373, at *2 (6th Cir. Aug. 27, 2003). By logical extension of these rulings, plaintiff's charge that complaints about disciplinary proceedings are not recognizable in a TDOC grievance does not implicate the Constitution either.

V. **Conclusion**

For the reasons set forth above, the Court finds that plaintiff has failed to state a claim for relief under § 1983 and that his case should be dismissed. 28 U.S.C. § 1915(e)(2)(B); § 1915A.

A separate order will enter.


**ENTER**:


                                                s/J. RONNIE GREER
                                   UNITED STATES DISTRICT JUDGE